Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000854
28-OCT-2019
07:50 AM

NO. CAAP-17-0000854

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
CHARLES C. PORTER, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DCC-17-0000106)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Charles C. Porter (**Porter**) appeals from a Judgment and Notice of Entry of Judgment entered on November 16, 2017 (**Judgment**), in the District Court of the Fifth Circuit, Lihu'e Division (**District Court**).[1] The District Court convicted Porter of Harassment, in violation of Hawaii Revised Statutes (**HRS**) § 711-1106(1)(a) (2014).[2]

---

[1] The Honorable Michael K. Soong presided.

[2] HRS § 711-1106(1)(a) provides:

§ 711-1106 **Harassment.** (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
(a)   Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]

Porter raises four points of error on appeal, contending that: (1) the trial court violated his rights to a fair trial by denying his requests to continue the trial; (2) (in his second and third points) the prosecution committed misconduct because it did not provide Porter with any discovery and failed to disclose exculpatory and/or impeachment <u>Brady</u> evidence; and (3) he received ineffective assistance of counsel throughout the trial court proceedings, which denied him his right to a fair trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Porter's contentions as follows:

(1) Porter submits that, prior to the start of trial, his attorney, Craig De Costa (**De Costa**), did not request or review any discovery and failed to subpoena any witnesses, including Officer Eric Higa (**Officer Higa**), who was one of the two officers that responded to Porter's 911 call on April 21, 2017. At trial, after the State rested its case, De Costa indicated that he wanted to call Officer Higa as a witness and wanted to use the responding officers' body-camera footage at trial. The District Court indicated Officer Higa was not present, and, construing De Costa's statements as a motion to continue trial, denied the motion on the ground that if De Costa wanted to question the officer, he should have subpoenaed him. The District Court later explained:

> [T]he records indicate this matter was set for trial back on September 5th, 2017, and no subpoenas were issued, no

2

discovery demands or anything to that effect were made. And
I'm not going to grant the continuance in the . . . middle
of trial.

Counsel for the State said De Costa had emailed him,
asking about body-camera footage, about a week before trial,
which was past the discovery deadline, and De Costa had not made
a prior discovery request.

In State v. Williander, 142 Hawaiʻi 155, 163-64, 415
P.3d 897, 905-06 (2018), the Hawaiʻi Supreme Court held that a
defendant seeking a continuance of trial must make a showing that
counsel exercised due diligence in seeking to obtain the
attendance of the witness. A trial court also must consider
whether the witness would provide relevant and material testimony
that benefits the defendant. Id.

Here, De Costa failed to exercise due diligence in
seeking to obtain Officer Higa's testimony where, by his own
admission, De Costa failed to subpoena the officer between the
time trial was set, on September 5, 2017, and held, on November
16, 2017. Indeed, De Costa waited until after the trial
commenced to request an opportunity to secure Officer Higa's
testimony. It appears that De Costa could have determined, prior
to trial, whether the prosecution had in fact subpoenaed Officer
Higa or whether he needed to do so himself.

Regarding the second Williander factor, De Costa
informed the District Court that he believed that the testimony
of the State's two witnesses, Joshua Adney (**Adney**) and Adney's
girlfriend, Qian Kaneakua (**Kaneakua**), was inconsistent with their

3

statements to Officer Higa and, therefore, he wanted to proceed with Officer Higa. De Costa offered no specific argument as to the nature of the alleged inconsistencies. However, Adney's testimony was arguably the only direct evidence that Porter shoved Adney,[3] which was conduct identified by the court as the basis for the court finding Porter guilty of harassment. Other than Porter's own testimony, Officer Higa's testimony, if beneficial, was arguably the only way for Porter to challenge and cast doubt on the State's evidence.[4] Yet, on the present record in this case, the unspecific and unsupported assertion of inconsistency does not lead to a conclusion that Officer Higa would have provided relevant and material testimony that benefits Porter.

As De Costa failed to exercise due diligence and we cannot conclude that Officer Higa's testimony was relevant and material testimony that benefitted Porter, we conclude that the District Court did not violate Porter's right to compulsory process and did not abuse its discretion in denying a continuance of trial on that ground.

Similarly, with respect to Porter's request to continue trial to allow him to obtain footage from the officers' body

---

[3] Kaneakua did not see what happened, but testified as to what she heard, and she testified that Adney "said he will call policeman if -- for -- he said he will call policeman because of the neighbor and Charles Porter pushing him." The trier-of-fact could have viewed this testimony as supportive of Adney's testimony.

[4] We note that the recording from Officer Higa's body camera, which included the witnesses' statements to Officer Higa, was neither turned over by the State nor, it appears, the subject of a timely discovery request.

cameras, it is undisputed that Porter did not submit a written discovery request to the State or a motion to compel discovery to the District Court, as required by Hawai'i Rules of Penal Procedure (**HRPP**) Rule 16.1. Porter did not move for a continuance until the day of trial, over five months after he was arraigned,[5] to obtain the footage. In the Declaration attached to the Motion for New Trial, De Costa averred that in September, 2017, he asked two prior deputy prosecutors for the body-camera footage, then went on a three-week vacation. He did not explain why he failed to follow up with his request or file a written motion for discovery. When Porter requested the continuance, the District Court was ready to proceed, and the State's witnesses were waiting to testify. Porter argues that the body-camera footage would have shown that when the police arrived, he was calm and peaceful, "not some crazy, out of control, person harassing his neighbor." Again, De Costa failed to exercise due diligence in obtaining the body-camera footage and while video showing Porter's calm demeanor upon the arrival of the police officers might have provided some incremental benefit to Porter, we cannot conclude that the District Court violated Porter's right to a fair trial and abused its discretion in denying a continuance of trial on that ground.

(2) Porter argues that the prosecution violated the <u>Brady</u> rule by not providing him with footage from the police officers' body cameras.

---

[5]     De Costa represented Porter at his arraignment.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the good faith or bad faith of the prosecution. The <u>Brady</u> rule has been incorporated into Hawai'i due process jurisprudence and relied upon frequently by the Hawai'i Supreme Court. <u>State v. Matafeo</u>, 71 Haw. 183, 185-86, 787 P.2d 671, 672 (1990).

Here, however, Porter has not shown that the body-camera footage was material. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). <u>State v. Moriwaki</u>, 71 Haw. 347, 356, 791 P.2d 392, 397 (1990) (some internal quotation marks omitted). "In order to establish a <u>Brady</u> violation, an appellant must make a showing that the suppressed evidence would create a reasonable doubt about the Appellant's guilt that would not otherwise exist." <u>State v. Okamura</u>, 78 Haw. 383, 402, 894 P.2d 80, 99 (1995) (citation, brackets and internal quotation marks omitted), <u>abrogated on other grounds by State v. Cabagbag</u>, 127 Hawai'i 302, 277 P.3d 1027 (2012).

The question is not whether the defendant would more likely than not have received a different verdict with the

evidence, but whether in its absence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Kyles v. Whitley, 514 U.S. 419, 434 (1995) (discussing Bagley). One shows a Brady violation by demonstrating "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435 (footnote omitted). There is nothing in the body-camera footage that would corroborate Porter's version of the events – i.e., that Porter did not shove Adney during their confrontation outside of Porter's residential unit. Merely demonstrating that Porter had a calm demeanor, after-the-fact, does not create a reasonable probability that, had the evidence been shown to Porter, the result of his trial would have been different.

We conclude that Porter's assertion of Brady violations and prosecutorial misconduct are without merit.

(3) Porter argues, inter alia, that De Costa provided ineffective assistance of counsel on numerous grounds, including that De Costa failed to demand and review discovery before trial, failed to identify, prior to trial, witnesses with exculpatory or otherwise favorable evidence, failed to compel the presence of favorable witnesses, including Officer Higa and others, failed to demand and use the body-camera footage from the responding officers, and otherwise failed to conduct a pretrial investigation to interview and obtain statements from witnesses with favorable evidence. Porter's appellate counsel did not

serve a copy of the Opening Brief on De Costa, as required by Hawai'i Rules of Appellate Procedure Rule 28(a).

Although Porter's allegations are not patently frivolous and, if proven, might entitle him to relief, the record on appeal is insufficiently developed to conclude that De Costa provided ineffective assistance of counsel. A full and fair evidentiary hearing on an HRPP Rule 40 petition would give Porter a full opportunity to present evidence, with the assistance of counsel, including the examination of De Costa, and De Costa would have an opportunity to be heard. Thus, we conclude that Porter's conviction should not be vacated at this time based on ineffective assistance of counsel, but rather that his conviction should be affirmed without prejudice to Porter's filing of an HRPP Rule 40 petition on the grounds of ineffective assistance of counsel.

For these reasons, the District Court's November 16, 2017 Judgment is affirmed without prejudice to Porter's filing of an HRPP Rule 40 petition on the grounds of ineffective assistance of counsel.

DATED: Honolulu, Hawai'i, October 28, 2019.

On the briefs:

Barry L. Sooalo,
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

8